# IN THE COURT OF APPEALS OF IOWA

No. 23-0060
Filed October 11, 2023

IN RE THE MARRIAGE OF FRANCES ELIZABETH PIPES
AND RODERICK PIPES

Upon the Petition of
FRANCES ELIZABETH PIPES,
    Petitioner-Appellant,

And Concerning
RODERICK PIPES,
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

Frances Pipes appeals from the decree dissolving her marriage to Roderick Pipes. **AFFIRMED.**

Katherine S. Sargent and Gary E. Hill of Family Law Solutions of Iowa LLC, Des Moines, for appellant.

Roderick Pipes, Bondurant, self-represented appellee.

Considered by Tabor, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Frances Pipes appeals from the decree dissolving her marriage to Roderick Pipes. She argues that the district court should have awarded her traditional spousal support—despite their sixteen-year marriage falling below the typical durational threshold for that support—because she suffered a disability during the marriage and claims she cannot work. But the district court found it more credible that Frances has been choosing not to seek employment. Because of the deference we owe both a district court's credibility finding and its equitable judgment in deciding whether to award spousal support, we cannot conclude the court acted inequitably.

Frances also seeks to increase her attorney-fee award from $2000 to $7500—the full amount she owes her attorney. But the district court did not abuse its discretion in deciding that the parties' respective abilities to pay did not justify a larger award. We thus affirm.

I.     **Background Facts and Proceedings**

Frances and Roderick Pipes were married for sixteen years. They married in their thirties and did not have any children together. But they both have adult children from prior relationships.

Frances has an associate's degree, a bachelor's degree in psychology, and a master's degree in business administration. She worked a number of varied jobs during the first nine years of their marriage, including positions with multiple insurance companies, a hotel, and the State of Iowa. But in 2015, she fell while vacationing in Jamaica and injured her knee. She claims that since then, she has been unable to work full-time because of the injury and related health issues.

Despite the injury, she has attempted to work multiple different jobs that she ultimately did not maintain. She eventually qualified for Social Security disability benefits due to the knee injury and other health issues. At the time of trial, that monthly benefit was $1270. She kept applying for part-time jobs unsuccessfully. And she has continued to travel often. For example, in the month or two before trial she visited Arizona, Kentucky, and Oklahoma.

Roderick has a GED and a commercial driver's license. At the time of trial, he worked as a swing driver for a waste management company. He makes considerably more income than Frances: his base wage was about thirty-one dollars per hour with a slightly higher wage for certain shifts. He testified he generally works fifty-five to sixty hours per week, with everything over forty hours per week overtime paid at time-and-a-half. But he also testified he has no guaranteed overtime and his employer is moving toward limiting employees to forty hours per week because of a recent loss of clients.

In April 2021, Frances filed the petition for dissolution. The parties eventually agreed to a distribution of their property that the court accepted. Most relevant, Roderick kept their house and some vehicles, while Frances got other vehicles and both her and Roderick's retirement accounts totaling close to $50,000. Roderick also retained the obligation to pay their mortgage and his bankruptcy-plan payments that continue until December 2023.

The parties did not reach agreement on Frances's requests for traditional spousal support and attorney fees. She sought monthly payments from Roderick of $1000 that would increase to $1500 when his bankruptcy-plan obligations ended and then revert to $1000 after she turned sixty-five. The payments would continue

until either of them dies or Frances remarries or cohabitates with a paramour. She also asked for an award of her $7500 in attorney fees—the entire flat rate amount that she owed her attorney.

So the parties went to trial in July 2022 disputing only these issues. Both parties were originally represented by counsel. But after paying at least $3500, Roderick decided he could not afford an attorney and represented himself at trial. He argued that the court should not award any spousal support or attorney fees.

The district court mostly agreed with Roderick. It declined to order spousal support. But it ordered Roderick to pay $2000 toward Frances's attorney fees. The court also adopted the property distribution agreed to by the parties. Frances then moved to reconsider, arguing mainly that it was inequitable to decline to award traditional spousal support and attorney fees when the property distribution was unequal: awarding property valued at about $61,000 to her and about $139,000 to Roderick. In response, the district court reconsidered the decree and ordered Roderick to pay monthly equalization payments totaling $27,500. The district court still declined to award spousal support or attorney fees. Frances appeals those decisions.

## II.     Spousal Support

We review a district court's decision on spousal support de novo. *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023). Yet even so, we give deference to the district court's "important, but often conjectural, judgment calls" and must not engage in "undue tinkering" on appeal. *Id.* at 182–83 (citation omitted). Thus, we will "disturb the district court's determination of spousal support

'only when there has been a failure to do equity.'" *Id.* (quoting *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015)).

"Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *Id.* at 185 (quoting *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022)). "Iowa courts are to equitably award spousal support by considering" the statutory factors under Iowa Code section 598.21A(1) (2021). *Id.* (cleaned up).

Frances seeks only one of the four forms of spousal support recognized by our supreme court: traditional spousal support. Such support "is equitable in marriages of long duration to allow the recipient spouse to maintain the lifestyle to which he or she became accustomed." *Id.* "Generally, only 'marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support.'" *Id.* (quoting *Gust*, 858 N.W.2d at 410–11). But with "extraordinary" facts—such as a mother suffering permanent disability during childbirth that prevented her from working—traditional spousal support may be justified "even where the marriage was not close to meeting" the threshold. *Id.* at 186 (citing *Mills*, 983 N.W.2d at 73).

Frances recognizes that her sixteen-year marriage to Roderick falls outside this typical durational threshold for traditional spousal support. But she argues that traditional support is still appropriate—as it was in *In re Marriage of Mills*, 983 N.W.2d 61 (Iowa 2022)—because she suffered a disability that she claims prevents her from working.

This case indeed presents some similarities with *Mills*. The marriages are of similar duration: sixteen years and nearly fifteen years. *See Mills*, 983 N.W.2d

at 66. Both spouses seeking traditional alimony suffered a disability during their marriages and claimed they could no longer work to support themselves. *See id.* But there is one critical difference. In *Mills*, the district court found the wife's "testimony regarding her inability to work credible." *Id.* Yet here, the district court found Frances's testimony that she could not work "less than credible." Instead, the district court found it "more credible" that Frances had chosen "not to pursue employment of any kind."

We place particular weight on this credibility finding. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013); Iowa R. App. P. 6.904(3)(g). And there is a basis in the record for it. Frances testified that she had traveled often— including trips to Arizona, Kentucky, and Oklahoma in the months just before trial— and that she hoped to return to school. Roderick testified that she generally could not hold long-term employment throughout their marriage even before her injury. Frances's testimony that she kept applying for part-time jobs also confirms her belief that she is capable of some level of employment.

Because of the district court's credibility finding on Frances's ability to work and our own review of this record, we reject her argument for avoiding the typical durational threshold based on her disability. And Frances offers no other arguments that would justify serious consideration of traditional spousal support outside these well-established contours. True, the twenty-year threshold has not been treated as "a bright-line test." *In re Marriage of Nelson*, No. 15-0492, 2016 WL 3269573, at *3 (Iowa Ct. App. June 15, 2016). But the supreme court recently characterized the award of traditional spousal support after a fifteen-year marriage in *Mills* as "not falling within the well-established" category because that duration

"was not close to meeting 'the typical durational threshold.'" *Sokol*, 985 N.W.2d at 185 (quoting *Mills*, 983 N.W.2d at 73). And thus, without the extraordinary facts that justified that award, the discretion to award traditional spousal support here "is limited." *Id.*

To be sure, the other statutory factors considered by the district court also weigh against awarding traditional spousal support. Frances is in her mid-fifties and has a master's in business administration providing significant earning potential if she chooses to work. The property distribution left Frances with both her and Roderick's retirement accounts and equalization payments totaling $27,500. In contrast, Roderick received few, if any, liquid assets. What's more, he maintains significant obligations to make the equalization payments, bankruptcy-plan payments, and mortgage payments on the marital home. This leaves him with little flexibility to pay spousal support in the immediate future. And because he lost his retirement account, he also needs to rebuild his own retirement funds. The district court did not fail to do equity by denying Frances's request for traditional spousal support.

### III. Attorney Fees

We review the district court's decision on attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Parties in a dissolution proceeding are not entitled to attorney fees as a matter of right; the court has "considerable discretion." *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977). The key factor to be considered is "the respective abilities of the parties to pay." *Sullins*, 715 N.W.2d at 255 (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)).

Frances argues that the district court should have awarded her the entire $7500 in fees that she owes her attorney. Instead, the district court decided that an award of $2000 in fees would be "fair and equitable" after concluding that neither party had "a greater ability than the other to pay" the larger sum. Frances challenges that decision by focusing on her limited liquid assets and ability to pay. But that focus overlooks that Roderick also has limited liquid assets and ongoing bankruptcy-plan payments that limit his ability to pay. Indeed, Roderick chose to represent himself at trial—and in this appeal—after deciding that he could not afford to pay any more fees to his own attorney. The district court did not abuse its discretion in awarding only some of Frances's attorney fees.

**AFFIRMED.**